UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIA DEPARTMENT OF
TOXIC SUBSTANCES CONTROL,

    Plaintiff,

    v.

FREUD F. FARLEY and KARL C. KLUCK,

    Defendants.
_____/

No. C 05-3150 PJH

**ORDER GRANTING SUMMARY ADJUDICATION IN PART AND DENYING SUMMARY ADJUDICATION IN PART**

Plaintiff's motion for summary adjudication came on for hearing before this court on September 6, 2006. Plaintiff, California Department of Toxic Substances Control ("plaintiff") appeared through its counsel, Rose B. Fua and Jamie Jefferson. Defendants, Freud F. Farley and Karl C. Kluck ("defendants"), appeared through their respective counsel, James Hanavan. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS plaintiff's motion for summary adjudication in part, and DENIES the motion in part, for the reasons stated at the hearing, and as follows.[1]

**BACKGROUND**

This case arises under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601. Defendants purchased a property located in the Hunter's Point district of San Francisco in 1984. See Complaint for Recovery of

---

[1] As an initial matter, the court notes that defendants have included footnotes in their papers that violate this court's Local Rules and case management order, both of which require that all footnote text be of the same font size as text contained in the body of defendants' argument. Although the court will consider defendants' footnotes for purposes of the instant motion, defendants are hereby placed on notice that failure to follow the above rule in future will result in the court striking all footnotes from the record.

Response Costs, Declaratory Relief ("Complaint"), ¶ 4.  Prior to the purchase, the property had been used for years as a drum recycling and disposal facility, and it continued to be so used after defendants purchased the property.  See Complaint, ¶¶ 9-10.

Plaintiff, the California Department of Toxic Substances Control and its predecessor entities ("plaintiff"), began inspecting the property in 1980, prior to defendants' purchase of the property, which inspections continued throughout the years subsequent to defendants' purchase of the property, through the 1990s.  Id. at ¶¶ 11-19.  Those numerous inspections revealed that the soil and groundwater of the property were contaminated with numerous hazardous substances, and that the contamination had affected the adjacent properties.  Id.

As a result of plaintiff's multiple inspections and testing, plaintiff sought to remove the offending substances from the property and to remediate the property in order to eliminate all contamination.  This process, which began with the above testing in the 1980s, continued up until 2003, when the property was finally declared contamination free.  In order to conduct the removal and remediation of the property throughout the years, plaintiff sued and secured the participation of approximately 65 potentially responsible parties ("PRP"s), who had used the property for drum disposal activities over the years.  Id. at ¶¶ 24, 26, 29.  Ultimately, those PRPs agreed – through a Consent Order – to pay for response costs at the property.  See Complaint, ¶ 32.   Defendants, however, were not participants to the prior Consent Order, and have never participated in plaintiff's removal and remediation efforts, aside from undertaking limited action in response to plaintiff's request that defendants make access to the site possible.  Id. at ¶ 33.

On August 3, 2005, plaintiff filed the instant action against defendants.  The action alleges one CERCLA claim seeking recovery of the response costs (both removal and remedial costs) that plaintiff incurred with respect to the property.  See generally, Complaint.  Defendants filed an answer to plaintiff's complaint on October 6, 2005.  See generally, Answer to Complaint for Recovery of Response Costs and Declaratory Relief

("Answer"). In their answer, defendants assert twelve affirmative defenses. See id.

Plaintiff now moves for summary adjudication on the question of defendants' liability under CERCLA. Specifically, plaintiff seeks a ruling establishing that defendants are jointly and severally liable for response costs incurred by plaintiff in conducting and overseeing the remediation of defendants' property. Defendants also make a passing request, in their opposition brief, to re-open discovery pursuant to Federal Rule of Civil Procedure ("FRCP") 56(f).[2]

**DISCUSSION**

A.   Legal Standard

Courts apply the same standards to summary adjudication motions as with summary judgment motions, which are granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.   Scope of Plaintiff's Motion

Preliminarily, the court must address issues related to the scope of plaintiff's motion. Plaintiff's motion papers seek a summary adjudication ruling with respect to plaintiff's CERCLA cause of action, as well as with respect to all twelve of defendants' affirmative

---

[2] Both parties have also concurrently filed: (1) requests for judicial notice (both parties); (2) objections to evidence (defendants only); and (3) a request to strike the objections to evidence (plaintiff only). The court hereby: (1) GRANTS the parties' requests for judicial notice; (2) OVERRULES defendants' objections to evidence; and (3) DENIES plaintiff's motion to strike defendants' objections to evidence.

3

defenses.  See Op. Br. at 3:2; 13-17.  Defendants take issue with this, and argue that plaintiff's notice of motion fails to properly place defendants' affirmative defenses before the court for resolution.

The court finds that, as a procedural matter, plaintiff's notice of motion and corresponding memorandum of points and authorities sufficiently places defendants on notice that plaintiff is seeking a ruling with respect to defendants' affirmative defenses in addition to the CERCLA cause of action, and that these defenses are therefore properly before the court.  In so ruling, the court notes that defendants had ample opportunity to respond to plaintiff's affirmative defense arguments in their opposition, and did so, although defendants chose to focus their arguments on fewer than the twelve affirmative defenses raised in plaintiff's opening motion.

Notwithstanding that the scope of plaintiff's motion includes defendants' affirmative defenses, however, the court finds that the majority of the affirmative defenses raised by plaintiff relate to damages issues, rather than liability.  And since plaintiff admittedly seeks summary adjudication of all issues related to CERCLA liability only – and defendants have engaged in a thorough and adequate briefing of those issues – the court's ruling is therefore confined to those affirmative defenses that go directly to the issue of defendants' liability under CERCLA.

Accordingly, the court's order addresses the following issues: (1) whether the requirements for the imposition of liability on defendants are satisfied under CERCLA; and (2) the validity of defendants' third, fourth, seventh, ninth, and tenth affirmative defenses, all of which bear directly on defendants' CERCLA liability.

C.     CERCLA Liability

To establish a prima facie case to recover its response costs from defendants under CERCLA, the government has to prove:  (1) the site at issue is a "facility"; (2) a "release" or "threatened release" of a hazardous substance occurred; (3) the government incurred costs in responding to the release or threatened release; and (4) the defendants are the liable

party. See 42 U.S.C. § 9607; see also U.S. v. Chapman, 146 F.3d 1166, 1169 (9th Cir. 1998); Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1152-53 (9th Cir.1989). Once the government presents a prima facie case for response costs, the burden shifts to the defendants to prove the government's response action was inconsistent with the National Contingency Plan. See Washington State Dept. of Transp. v. Washington Natural Gas Co., 59 F.3d 793, 799-800 (9th Cir.1995); United States v. Hardage, 982 F.2d 1436, 1443 (10th Cir.1992).

Here, the undisputed evidence demonstrates that plaintiff has met its burden of proving its prima facie case for liability. First, defendants do not dispute that over 70 hazardous substances were detected on defendants' property, which qualifies the property as a "facility" pursuant to 42 U.S.C. § 9601(9). See Declaration of Barbara J. Cook in Support of MSA ("Cook Decl."), ¶¶ 7-8. Second, defendants do not dispute that actual "releases" of hazardous substances occurred on the property. See id. at ¶¶ 9, 12, 14; see also Declarations of Clifton Davenport ("Davenport Decl.") and Denise Tsuji ("Tsuji Decl.") in Support of MSA, ¶¶ 10-11 and ¶¶ 10-11, respectively.[3] Third, defendants do not dispute that they are a liable party, in that they qualify under at least two of the categories of persons listed in CERCLA as liable persons – either as owners of the facility in question, or as owners of a facility at which hazardous substances were disposed of at the time of disposal. These facts are sufficient to satisfy the first, second, and fourth of the above-listed elements of plaintiff's prima facie case.

This leaves the third element, which requires plaintiff to prove that it incurred costs in responding to the release of hazardous substances. Defendants do not dispute that the

---

[3] While defendants do not dispute that hazardous substances were either detected or released on defendants' property, at the hearing on this matter, counsel for defendants did object that plaintiff's evidentiary proof of these hazardous substances – attached as exhibits to the Cook and Tsuji Declarations – lack foundation and cannot be authenticated for summary adjudication purposes. This objection is overruled, as exhibits 1-4 of the Cook Declaration and exhibits 1-3 of the Tsuji Declaration are admissible either as public records or reports authenticated pursuant to Federal Rule of Evidence 901(b)(7), or as self-authenticating documents pursuant to Federal Rule of Evidence 902(4) or (11).

government incurred costs, but *do* make the related argument that to the extent that plaintiff seeks to recover for costs involved in its oversight of the PRP group's remedial actions regarding the property, these oversight costs are not recoverable. However, as plaintiff points out, indirect costs, which would include oversight costs, are recoverable under CERCLA. See U.S. v. W.R. Grace & Co., 429 F.3d 1224, 1250 (9th Cir. 2005)("administrative and other overhead costs incurred" recoverable under CERCLA), citing United States v. Dico, 266 F.3d 864, 878 (8th Cir.2001) (also concluding that "*oversight* and indirect costs are recoverable in remedial actions under CERCLA")(emphasis added).

Accordingly, based on the above, and defendants' failure to point to evidence actually disputing that the above four elements are satisfied, the court concludes that plaintiff has satisfied its prima facie showing for CERCLA liability. The next, and most significant issues, however, are whether defendants have mounted viable affirmative defenses to that liability.

D.   Defenses to Liability

Defendants generally raise three affirmative defenses that, if successfully demonstrated, would negate CERCLA liability. First, defendants assert that the statute of limitations under CERCLA bars plaintiff's claim for removal costs from the outset. Second, defendants argue that they are entitled to a defense to liability by reason of a third party act or omission, as set forth under CERCLA, 42 U.S.C. § 9607(b). Finally, defendants contend that they are entitled to the innocent landowner defense provided under CERCLA, 42 U.S.C. § 9607(b) and § 9601(35).

1.   Statute of Limitations

Defendants claim – in their seventh, ninth, and tenth affirmative defenses – that no liability may be imposed for any removal costs that plaintiff seeks, because plaintiff's action is barred by the relevant statute of limitations.

Both parties generally agree on the applicable statute of limitation under CERCLA.

1  Under 42 U.S.C. § 9613(g)(2)(A-B), a plaintiff has three years after completion of the last
2  removal action on a property, to file a suit to recover removal costs. Id.  A plaintiff has six
3  years after initiation of physical on-site construction regarding a remedial action, to file a
4  lawsuit to recover remedial costs. Id.  However, a plaintiff may seek both removal and
5  remedial costs in a lawsuit for recovery if remedial action efforts were initiated within three
6  years after the completion of the last removal efforts, and the lawsuit for recovery of costs
7  is filed within 6 years of initiation of physical on-site construction regarding the remedial
8  action. Id.

9  Since the instant action is a suit for recovery of both removal and remedial costs, the
10 relevant statute of limitations is the latter, and to be timely, this action must have been filed
11 within 6 years of the initiation of physical on-site construction regarding remedial efforts,
12 and the remedial efforts must have taken place within 3 years of the completion of the last
13 removal action. The instant action was filed on August 3, 2005. See Complaint.

14 Despite agreement on the above standard, the parties dispute whether the statute of
15 limitations applies to bar the instant action.  This dispute is rooted in a disagreement as to
16 which actions on the property are to be classified as remedial in nature, and which are to
17 be classified as removal actions.  Defendants claim that removal efforts occurred on the
18 site until March 1996 at the latest (at which time the Consent Order between plaintiff and
19 the PRPs was entered), at which point all actions on the site should be classified as
20 remedial efforts and actions.  And since "physical on-site construction" regarding those
21 remedial actions on the property did not commence until July 2001, the gap between
22 removal and remedial on-site construction is greater than the allowable 3 years, and the
23 action is barred.

24 Plaintiff, by contrast, argues that all actions at the site were removal actions until the
25 Remedial Action Plan ("RAP") was approved, in 2000.  Only after approval of the RAP in
26 2000 could the actions on the site become remedial actions and could physical on-site
27 construction of those remedial actions occur (which plaintiff agrees was in July 2001).
28

7

Since plaintiff also asserts that removal actions occurred on several occasions between 1998 and 2000, it argues that the instant suit is not barred by the statute of limitations, since remedial actions post-RAP would have occurred within 3 years of the last removal action, and the lawsuit was filed within 6 years of on-site construction regarding those remedial actions.

The applicable case law demonstrates that plaintiff is correct. In <u>California ex rel. Dep't of Toxic v. Neville Chem</u>., for example, the Ninth Circuit had occasion to consider the statute of limitations with respect to remedial actions specifically. <u>See</u> 358 F.3d 661, 670 (9th Cir. 2004). The court there explicitly held that the statute of limitations for the filing of a suit for recovery of remedial action costs under CERCLA does not begin to run until after final adoption of a remedial action plan. <u>See</u> 358 F.3d at 663. The court also held that "an action can only be remedial if it is taken after the final remedial action plan is approved...". <u>See id</u>. at 670. Here, this would mean that until the RAP was approved in August 2000, all actions on the property were removal actions.[4] <u>See</u> Cook Decl., ¶ 14. Such removal actions would include, as plaintiff points out, a 1998 Final Soil Removal Action Work Plan, and a March 2000 Feasibility Study and Remedial Action Plan. <u>See</u> Cook Decl., ¶ 14; Hanavan Decl., Ex. 14.

Defendants attempt to avoid this result by arguing that the court must look to the nature of the actions undertaken by plaintiff, and that where the actions undertaken are meant to be permanent in nature and do not represent a short-term action taken to halt an "immediate risk," the action must be characterized as remedial, even if no RAP has been

---

[4] While plaintiff's brief states that the RAP was approved in August 2000, and defendants appear to concur in their opposition, the court is unable to confirm this fact affirmatively from review of the evidentiary material. Plaintiff relies on paragraph 14 of the Cook Declaration for support of this fact, which describes the drafting of the RAP in 2000. However, that same paragraph fails to confirm an approval date for the RAP, but simply refers to plaintiff's "approv[al]" of a Remedial Design and Implementation Plan in July 2001. As for defendants, they cite to Exhibit 14 of the Hanavan Declaration in Support of Opposition to MSA, at pp. 46-47. However, exhibit 14 appears to include only a draft RAP copy, not a final approved copy of the RAP. Notwithstanding this discrepancy, however, the court will rely on an August 2000 approval date for the RAP, as both parties concede this to be the case.

adopted yet. Defendants claim that, since all actions after 1996 were aimed towards permanent remediation of the property, they should all be characterized as remedial, even if the RAP was not officially adopted until 2000.

The problem with this argument is that it goes against the Ninth Circuit holding in Neville, which explicitly states that remedial actions can only take place after the RAP is adopted since, as the court pointed out, parties "could [not] have known before the final RAP was approved whether any particular construction projects would be 'consistent with the final [or permanent] remedy'". See 358 F.3d at 668. This reasoning makes sense, and answers defendants' argument raised above: i.e., although defendants correctly note that a remedial action can be classified as involving a degree of permanence, one cannot know whether an action is actually permanent, and therefore remedial, until the RAP has been approved that makes it so. Hence, the Ninth Circuit – and now, this court's – use of the RAP as a bright-line indicator for triggering remedial actions. Indeed, the Neville court even addressed the concern that its interpretation might make the definition of remedial actions "superfluous," but nonetheless held that the statute required this reading. Given the rationale expressed in Neville, defendants' arguments, even if appealing, must fail.

Moreover, although defendants make an effort to marshal alternative case law in their support, the cases they rely on are largely district court cases that have no binding authority. Furthermore, defendants never undertake to truly distinguish Neville, or its implications, other than to say that Neville did not address the specific question whether activities preliminary to physical on-site construction of remedial actions constitute remedial or removal activities. While technically true, this does not address the underlying rationale noted above, which would seem to categorize activities preliminary to approval of the RAP as necessarily removal in nature. See also Neville, 358 F.3d at 670 fn. 6.

In sum, for all the above reasons, the court determines that all actions prior to the August 2000 approval of the RAP were removal actions, and those coming afterward, remedial actions. And since it is undisputed that the 1998 Final Soil Removal Action Work

9

Plan and March 2000 Feasibility Study and Remedial Action Plan took place prior to the August 2000 RAP approval, and that on-site physical construction of remedial actions commenced in July 2001, the court concludes that: (1) remedial action efforts were commenced in 2001, following RAP approval, and within three years of completion of the last removal activities in 1998 and 2000; and (2) the instant action to recover costs was furthermore filed within 6 years of the initiation of physical on-site construction in 2001.

Accordingly, the instant lawsuit for removal costs is not time-barred under CERCLA's statute of limitations.

### 2. Third Party Act or Omission Defense

Defendants' third affirmative defense invokes a defense to liability under CERCLA by reason of a third party act or omission. See 42 U.S.C. § 9607(b). The relevant provision provides, in part, that no liability will attach to a defendant under CERCLA, where a release of a hazardous substance is caused solely by "an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs *in connection with a contractual relationship* ... with the defendant...". See id. (emphasis added). Plaintiff moves for summary adjudication on this defense, pointing out that defendants were in a contractual relationship with the only third party who could otherwise acknowledge responsibility for releases at the site, the Bay Area Drum Company.

Plaintiff is correct. Defendants contracted with the Bay Area Drum Company for the purchase of the site in question in 1984, and for a subsequent 5 year lease. See, e.g., Declaration of Rose B. Fua in Support of the Motion for Summary Adjudication ("Fua Decl."), Ex. D-E; see also Declarations of Karl C. Kluck ("Kluck Decl.") and Freud F. Farley ("Farley Decl."), ¶¶ 4-5 and 5-6, respectively. Accordingly, to the extent that defendants seek to avoid liability based on any act or omission of the Bay Area Drum Company as a third party, they cannot do so under CERCLA, owing to the existence of the purchase agreement in place between them. Defendants not only concede the existence of this contractual relationship, but fail to submit either argument or evidence in support of the

opposite conclusion.

As such, the court finds that defendants cannot rely on the third party act or omission defense provided under CERCLA, in order to avoid liability under the Act.

### 3. Innocent Landowner Defense

Finally, defendants' fourth affirmative defense invokes the innocent landowner defense set forth under CERCLA. See 42 U.S.C. § 9607(b); 42 U.S.C. § 9601(35). This defense requires defendants to prove, in part, that they both (1) acquired the site in question "after the disposal or placement of the hazardous substance on ... the [site]"; and (2) "did not know and had no reason to know that any hazardous substance which is the subject of the release" was disposed on the property. See 42 U.S.C. § 9601(35).

Unlike with defendants' other asserted defenses to liability, there are disputed issues of triable fact with respect to this particular defense. While it is undisputed that defendants acquired the property after the initial disposal of hazardous substances on the property and had no knowledge that any hazardous substance was disposed on the property when they bought the property, see Kluck and Farley Declarations, ¶¶ 8 and 9 respectively, it is nonetheless disputed whether defendants *had any reason to know* that any hazardous substance was disposed on the property.

Plaintiff, for example, points to deposition testimony taken from both Kluck and Farley establishing that defendants were aware the property had been used for drum reconditioning prior to their purchase, and had seen drums on the property beforehand. See, e.g., Fua Decl., Ex. B at 80, 83-84; Fua Decl., Ex. C. At 67, 69, 71, 84. Plaintiff also points to the declaration of a former employee noting that, at the time of purchase, the site in question had an obvious odor, and visible pools of purplish liquid. See Declaration of Clifton Davenport in Support of Motion for Summary Adjudication, ¶ 7. Defendants, by contrast, both state that "[n]o information concerning the toxic conditions on the property was disclosed through the chain of title or by any posting on the property...". See Kluck and Farley Decls., ¶¶ 8 and 9 respectively.

11

The court finds that the above presents a disputed issue of material fact with respect to whether defendants had any reason to know, at the time they purchased the property, that any hazardous substances had been deposited on the property. Accordingly, the court concludes that a determination on the applicability of the innocent landowner defense must await consideration by the trier of fact.

As such, and in view of all the above, the court hereby GRANTS plaintiff's request for summary adjudication on the issue of defendants' prima facie liability under CERCLA, and furthermore GRANTS plaintiff's request for summary adjudication as to the applicability of defendants' third, seventh, ninth, and tenth affirmative defenses. Summary adjudication is DENIED, however, with respect to defendants' fourth affirmative defense on the issue of the innocent landowner defense. This issue will proceed to trial, in conjunction with defendants' remaining affirmative defenses, all of which go to the issue of damages.

E.   Rule 56(f) Request

In passing, defendants argue that they need an order re-opening discovery under FRCP 56(f), so that they can obtain information about the exact nature and amount of costs that plaintiff is asserting have been recovered with respect to its remedial costs. See Opp. Br. at 19:8-14. Defendants appear to assert that this information is crucial to the summary adjudication motion before the court, and point out that summary adjudication may not be granted until the court has ruled on defendants' request.

Defendants' request is DENIED. Defendants have not established how the discovery they seek is relevant to the liability issues that plaintiff has placed before the court via the instant motion. Indeed, they cannot do so, as the information they seek through a re-opening of discovery is information that bears on the issue of damages, and not liability. Moreover, defendants have not established either good cause for the re-opening of discovery after the close of fact discovery, or even what specific efforts they have undertaken and failed at in order to secure the discovery they now seek.

F.  Conclusion

For all the above reasons, the court hereby GRANTS summary adjudication on the issue of defendants' prima facie liability under CERCLA, and as to defendants' third, seventh, ninth, and tenth affirmative defenses. Summary adjudication is DENIED with respect to defendants' fourth affirmative defense on the issue of the innocent landowner defense, and this issue shall be resolved at trial. All remaining affirmative defenses, including those relating to due process and double recovery issues such as those raised by defendants in their opposition brief, shall be resolved as part of the damages issues to be raised at trial.

The parties are furthermore ORDERED to attend a further case management conference on **November 16, 2006**, at **2:30 p.m.**, in order to set a trial date with respect to the remaining issues to be tried.

**IT IS SO ORDERED.**

Dated: October 17, 2006

PHYLLIS J. HAMILTON
United States District Judge